1997 ND 48

In the Matter of the ESTATE OF Ruben J. PETERSON, Deceased.

Minnie BERGER, Personal Representative of the Estate of Ruben J. Peterson, Deceased, Clay Berger, Terry Bertelsen and Monte Bertelsen, Petitioners and Appellees,

v.

Dale A. PETERSON, Ronald B. Peterson, Virgil O. Peterson, Merle L. Peterson, Jeanine C. Kirschbaum, and Lila J. Close, Respondents and Appellants.

Civil No. 960241.

Supreme Court of North Dakota.

April 1, 1997.

Kathleen Key Imes, of Imes & Imes, P.C., Williston, for petitioners and appellees Estate of Ruben J. Peterson and Minnie Berger, Personal Representative, and Richard A. McKennett, of Winkjer McKennett Stenehjem Reierson & Forsberg, Williston, for petitioners and appellees Terry Bertelsen and Monte Bertelsen.

Fred E. Whisenand, of Crowley, Haughey, Hanson, Toole & Dietrich, P.L.L.P., Williston, for respondents and appellants.

SANDSTROM, Justice.

[¶ 1] We are asked to decide if the district court correctly ordered unequal distribution of probate-estate assets to give effect to the testator's intent, to decide the reasonableness of personal representative and attorney fees, and to decide if the personal representative breached her fiduciary duty. We affirm, concluding the distribution was proper, the fees were reasonable, and fiduciary duty was not breached.

I

[¶ 2] Ruben Peterson died on July 4, 1995. In his will, he nominated his sister, Minnie Berger, as personal representative. She was appointed on August 1, 1995. He also named nine beneficiaries: Minnie Berger and her two sons, Terry Bertelsen and Monte Bertelsen; and his deceased brother's six children, Dale A. Peterson, Ronald B. Peterson, Virgil O. Peterson, Merle L. Peterson, Jeanine C. Kirschbaum, and Lila J. Close ("Petersons").

[¶ 3] The beneficiaries disagreed about distribution of the estate and, on January 19, 1996, stipulated to supervised administration. An order for supervised administration was entered on January 29, 1996.

[¶ 4] Articles II and IV of the will are in issue, and provide:

"Article II

"All of the rest, residue and remainder of my estate properties, of every kind and nature, wherever the same may be situated, and whether now owned by me or may be hereafter acquired, I give, devise and bequeath in equal shares to the following parties: MINNIE BERGER, RONALD B. PETERSON, DALE A. PETERSON, VIRGIL G. PETERSON, MERLE L. PETERSON, JEANINE C. KIRSCHBAUM, LILA J. PERKINS, TERRY BERTELSEN, and MONTE BERTELSEN (thereby granting each an undivided 1/9th interest)."

"Article IV

"Among the assets of my estate there may be some certificates of deposit or savings certificates which may include, along with my name, some of the names of the devisees and legatees listed in Article II of my Will. It is my Will that all of the funds from such jointly owned certificates be divided equally among all nine of the legatees above noted notwithstanding their inclusion or exclusion by name on the said jointly owned certificates of deposit."

[¶ 5] When Ruben Peterson died he owned a number of savings accounts and certificates payable on death (P.O.D.). The P.O.D. accounts contained unequal amounts of money, and all nine beneficiaries were named on one or more of the P.O.D. accounts.

[¶ 6] On March 28, 1996, the district court ordered the P.O.D. accounts distributed to the named owners, and ordered the personal representative "to make appropriate unequal distribution of the remainder of the estate to make all of the heirs equal beneficiaries, to achieve the decedent's intent of equal distribution as stated in Article IV of his Will."

[¶ 7] On July 2, 1996, the district court issued its final order approving the final accounting and distribution. In the order, the district court approved $7,000 in fees for the personal representative, and $10,173.98 in attorney fees incurred by the personal representative. The district court also found the personal representative's failure to place a $100,000 certificate of deposit in an interest-bearing account was not a breach of her fiduciary duty. On July 19, 1996, the district court issued an additional order allowing attorney fees incurred by the Petersons to be paid from the estate, and inviting Terry Bertelsen, Monte Bertelsen, and Clay Berger to submit a bill to the estate for attorney fees they incurred.

[¶ 8] The Petersons appealed from the July 2, 1996, order approving the final accounting and distribution, and the July 19, 1996, order on attorney fees.

[¶ 9] The district court had jurisdiction under N.D. Const. Art. VI, § 8, and N.D.C.C. § 30.1–02–02. The appeal was timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. Art. VI, § 6, and N.D.C.C. § 28–27–01.

II

[¶ 10] The Petersons contend the district court erred in finding Ruben Peterson's testamentary intent was for all nine beneficiaries to share equally in the distribution of the estate and P.O.D. accounts, and in ordering unequal distribution of the estate residue to achieve equal distribution considering the P.O.D. accounts.

[¶ 11] The district court concluded the funds on deposit in the P.O.D. accounts could not be divided equally as provided in Article IV of Ruben Peterson's will. *In Matter of*

*Estate of Leier,* 524 N.W.2d 106, 110 (N.D. 1994), we stated: "Under NDCC 30.1–31–09(2)(b), on the death of the sole party, sums on deposit in an account with a P.O.D. designation belong to the surviving beneficiary or beneficiaries."[1]  A P.O.D. designation may not be altered by will. *Leier* at 109 (citing N.D.C.C. § 30.1–31–10).[2]  The district court correctly concluded the P.O.D. designations must be honored, and correctly ordered distribution according to the P.O.D. designations.

[¶ 12] The district court found Ruben Peterson's intent was for all nine beneficiaries to share equally in the estate, including the money in the P.O.D. accounts.  If the language of a will is clear and unambiguous, we determine for ourselves the testator's intent from the language of the will.  *E.g., Matter of Estate of Zimbleman,* 539 N.W.2d 67, 70–71 (N.D.1995).  Whether a will is ambiguous is a question of law for the court to decide.  *Zimbleman.*

[¶ 13] The decedent's intent can be determined from the will, because the language is clear and unambiguous.  In Article II, he expressed his intent for his estate to be divided equally among all nine beneficiaries.  In Article IV, he expressed his intent for his certificates of deposit or savings certificates to be divided equally among all nine named beneficiaries, notwithstanding whether they were named on the certificates.  Article IV clearly demonstrates Ruben Peterson mistakenly considered the accounts as part of his probate estate and thought he could alter the P.O.D. designations by his will.  We agree with the district court.  The clear and overriding intent expressed in the will is for all nine beneficiaries to share equally in the estate, including the money in the P.O.D. accounts.

[¶ 14] The primary objective in construing a will is to ascertain and effectuate the intent of the testator if the intent is not contrary to law.  *E.g., Bartz v. Heringer,* 322 N.W.2d 243, 244 (N.D.1982).  "The testator's intent, as expressed in the will, controls the legal effect of the testator's dispositions." *Zimbleman* at 70–71 (citing N.D.C.C. § 30.1–09–03).  "The language used in a will, however crudely or inartfully drawn, should be construed, if reasonably possible to accomplish, and not defeat, the testator's intent." *Matter of Estate of Klein,* 434 N.W.2d 560, 562 (N.D.1989).  Ruben Peterson's intent should not be thwarted by his apparent mistaken assumption he could alter the effect of the P.O.D. designations by his will.

[¶ 15] Non-probate property may be considered for the purpose of accomplishing a testator's intent to treat beneficiaries equally.  *Matter of Estate of Johnson,* 501 N.W.2d 342 (N.D.1993).  In *Johnson,* to accomplish the testator's intent, the value of property gifted before the testator's death was considered in determining the beneficiaries' shares under an equalization clause.  To give effect to Ruben Peterson's intent of equal distribution, the district court ordered unequal distribution of the estate, so each of the nine beneficiaries would, in fact, share equally when the amounts distributed from the P.O.D. accounts were considered in conjunction with the shares from the estate.

[¶ 16] We conclude, by ordering distribution according to the P.O.D. designations and appropriate unequal distribution of the estate, the district court properly gave effect to Ruben Peterson's intent while at the same time abiding by the law governing P.O.D. accounts.

## III

[¶ 17] The Petersons contend the district court erred by approving payment of person-

---

**1.** N.D.C.C.  § 30.1–31–09(2) provides:

"In an account with a P.O.D. designation:

\* \* \*

"b.  On death of the sole party or the last survivor of two or more parties, sums on deposit belong to the surviving beneficiary or beneficiaries.  If two or more beneficiaries survive, sums on deposit belong to them in equal and undivided shares, and there is no right of survivorship in the event of death of a beneficiary thereafter.  If no beneficiary survives, sums on deposit belong to the estate of the last surviving party."

**2.** N.D.C.C.  § 30.1–31–10(2) provides:

"A right of survivorship arising from the express terms of the account, section 30.1–31–09, or a P.O.D. designation, may not be altered by will."

al representative fees in the amount of $7,000 from the estate.

**[¶ 18]** "A personal representative is entitled to reasonable compensation for services rendered." *Matter of Estate of Flaherty*, 484 N.W.2d 515, 520 (N.D.1992) (citing N.D.C.C. § 30.1–18–19).[3] "The review of fees paid or taken by a personal representative is left to the sound discretion of the trial court." *Flaherty* at 521. We will not overturn the trial court's decision absent a showing of abuse of discretion, and the court's underlying findings of fact will be upheld unless clearly erroneous. *Flaherty.*

**[¶ 19]** The Petersons allege various time entries were double-billed and overstated. As admitted by the Petersons' attorney during oral argument, however, the specific billing errors were not raised before the district court. We will not address issues or contentions raised for the first time on appeal, nor, ordinarily, will the court remand a case to give a party an opportunity to redo what could have been done in the first place. *E.g., Wingerter v. North Dakota Dept. of Transp.*, 530 N.W.2d 362, 365 (N.D. 1995). The purpose of an appeal is to review the actions of the trial court, not to grant the appellant the opportunity to develop and expound on new strategies or theories. *E.g., In Interest of A.G.*, 506 N.W.2d 402, 403 (N.D.1993).

**[¶ 20]** The Petersons also allege the personal representative improperly billed for time spent working on her own creditor claim against the estate. The personal representative denies billing the estate for work on her own claim, and the Petersons have not introduced evidence affirmatively establishing the personal representative billed the estate for work on her own creditor claim.

**[¶ 21]** The record indicates this is a probate with a federal estate value of $681,-175. The personal representative submitted two statements totaling 528 hours (minimum). The statements show she spent many hours gathering Ruben Peterson's property, preparing it for sale, negotiating various sales of assets, including his home, motor home, and farmland, attending to medical bills totaling over $49,000, tending to other obligations of the estate, and working with tax advisors and other legal counsel to conclude the probate.

[¶ 22] We conclude the district court did not err in finding the "personal representative fees of $7,000 are more than reasonable under the circumstances," and did not abuse its discretion in allowing $7,000 in personal representative fees to be paid from the estate.

## IV

**[¶ 23]** The Petersons contend the district court erred by approving the personal representative's payment of $10,173.98 in attorney fees for administration of the estate.

**[¶ 24]** We will not reverse a trial court's determination on attorney fees, absent a clear abuse of discretion. *E.g., Oliver v. City of Larimore*, 540 N.W.2d 630, 633 (N.D.1995). The court's underlying findings of fact will be upheld unless clearly erroneous, and due regard will be given to the opportunity of the trial court to judge the credibility of the witness. *See* N.D.R.Civ.P. 52.

**[¶ 25]** Section 30.1–18–20, N.D.C.C.,[4] authorizes attorney fees incurred by a per-

---

3. N.D.C.C. § 30.1–18–19 provides:

   *"30.1–18–19. Compensation of personal representative.* A personal representative is entitled to reasonable compensation for the personal representative's services. If a will provides for compensation of the personal representative and there is no contract with the decedent regarding compensation, the personal representative may renounce the provision before qualifying and be entitled to reasonable compensation. A personal representative also may renounce the personal representative's right to all or any part of the compensation. A written renunciation of fee may be filed with the court."

4. N.D.C.C. § 30.1–18–20 provides:

   *"30.1–18–20. Expenses in estate litigation.* If any personal representative or person nominated as personal representative defends or prosecutes any proceeding in good faith, whether successful or not, the personal representative or nominee is entitled to receive from the estate necessary expenses and disbursements, including reasonable attorneys' fees incurred."

sonal representative to be paid from the estate. *Oliver* at 633. For payment of attorney fees from the estate under N.D.C.C. § 30.1–18–20, the personal representative's conduct must have been in good faith, free from fraudulent intent, and for the benefit of the estate. *Matter of Estate of Honerud,* 326 N.W.2d 95, 97 (N.D.1982).

[¶ 26] A benefit to the estate includes a personal representative's good faith attempts to effectuate the testamentary intent set forth in a facially valid will. *Flaherty,* 484 N.W.2d at 518. The personal representative must seek to give effect to the testamentary intent expressed in a facially valid will regardless whether the personal representative is also a beneficiary under the will. *See Flaherty.*

[¶ 27] A genuine controversy existed about Ruben Peterson's intent as expressed in his will and the P.O.D. accounts' designations. The district court correctly found the personal representative acted in good faith. Attorney fees incurred by the personal representative to determine and give effect to Ruben Peterson's intent regarding equal distribution were for the benefit of the estate.

[¶ 28] The Petersons allege attorney fees were wrongfully paid from the estate for legal work on the personal representative's own creditor claims. The district court found the two creditor claims of the personal representative were made in good faith and allowed $2,114.39 in payment from the estate for one of the claims. The district court did not, however, specifically order payment of attorney fees from the estate for time spent working on the personal representative's creditor claims. Instead, the district court found the attorney fees for the estate submitted by the personal representative, were "more than reasonable, considering the issues and size of the estate," and even if the attorney spent some time working on the personal representative's own claim, any fees were more than offset because the personal representative's attorney fees were "definitely under the money."

[¶ 29] A trial court is considered an expert in determining the value of reasonable attorney fees for services rendered to an estate. *E.g., Matter of Estate of Ridl,* 455 N.W.2d 188, 194 (N.D.1990). Although we would hesitate approving payment of attorney fees for work on the personal representative's own creditor claims, we cannot say the trial court allowed fees for that purpose. The trial court did not abuse its discretion in determining the fees submitted were reasonable.

[¶ 30] The district court did not clearly err in finding the personal representative acted in good faith for the benefit of the estate, or in finding the attorney fees were reasonable; nor did the district court clearly abuse its discretion in approving payment from the estate by the personal representative of $10,-173.98 in attorney fees.

V

[¶ 31] Minnie Berger, Terry Bertelsen, and Monte Bertelsen submitted credit claims against the estate which were opposed by the Petersons. The Petersons filed a petition requesting $4,279.50 in attorney fees they incurred contesting creditor claims filed against the estate be paid out of Minnie Berger's, Terry Bertelsen's, and Monte Bertelsen's share of the estate.

[¶ 32] The district court concluded the creditor claims were caused by uncertainties in the will itself, and it would be unfair for any particular beneficiaries to bear the sole burden of attorney fees. By order dated July 19, 1996, the district court allowed payment of $4,279.50 in attorney fees out of the estate, but not out of any group's share. The district court then invited Attorney Richard A. McKennett to submit a bill to the estate on behalf of his clients, Terry Bertelsen, Monte Bertelsen, and Clay Berger.

[¶ 33] The Petersons contend the district court erred by inviting Attorney McKennett to submit a bill for his fees to the estate on behalf of his clients. The district court, however, has not approved payment of Attorney McKennett's fees from the estate, nor has the court adjudicated any potential claims by Attorney McKennett's clients for attorney fees. Attorney McKennett did not submit a bill for payment of his attorney fees from the estate.

[¶ 34] Issues not raised or presented to the trial court are not ripe for resolution. *E.g., Kilzer v. Binstock,* 339 N.W.2d 569, 572 (N.D.1983). "This Court, on appeal, does not try new issues or act as a trial court, but rather reviews the actions of the trial court." *Kilzer.* We do not give advisory opinions. *E.g., State ex rel. Sprynczynatyk v. Mills,* 523 N.W.2d 537, 544 (N.D. 1994). That an issue may arise in the future does not empower us to issue an advisory opinion. *Gosbee v. Bendish,* 512 N.W.2d 450, 454 (N.D.1994). We decline to review the issue of Attorney McKennett's fees because no bill was submitted.

## VI

[¶ 35] The Petersons contend the district court erred by not requiring the personal representative to reimburse the estate for interest lost on a $100,000 certificate of deposit. The certificate matured on June 21, 1995, some 11 days before Ruben Peterson died, and the proceeds were not distributed to the P.O.D. beneficiaries until April 3, 1996. During that period, the personal representative did not renew the certificate or place the funds in another interest-bearing account.

[¶ 36] Under N.D.C.C. § 30.1–18–12,[5] a personal representative may be held liable for losses to an estate, including lost interest resulting from a breach of her fiduciary duty. *Ridl* at 193–195. Whether a personal representative breached her fiduciary duty to the estate is a finding of fact. *Matter of Estate of Rohrich,* 496 N.W.2d 566, 569 (N.D.1993). We will not set aside a trial court's findings of fact unless they are clearly erroneous. N.D.R.Civ.P. 52(a); *Rohrich,* 496 N.W.2d at 569.

[¶ 37] The record shows the personal representative inquired at the bank about cashing or renewing the certificate pending administration of the estate. Evidence further shows the bank refused to allow the personal representative to renew the certificate on the

grounds the proceeds belonged to the P.O.D. designees. Uncertainty existed whether the proceeds belonged to the P.O.D. designees or the estate. The district court found, based upon the unusual circumstances involved in the administration of the estate, the personal representative's failure to invest the funds of the certificate of deposit in an interest-bearing account "was not unreasonable or a dereliction of her fiduciary duty." The district court also found the personal representative acted in good faith. We conclude the district court's findings are not clearly erroneous.

## VII

[¶ 38] The order of the district court is affirmed.

[¶ 39] VANDE WALLE, C.J., NEUMANN and MESCHKE, JJ., and RALPH J. ERICKSTAD, Surrogate Judge, concur.

[¶ 40] RALPH J. ERICKSTAD, Surrogate Judge, sitting in place of MARING, J., disqualified.

---

5. N.D.C.C. § 30.1–18–12 provides:
   "*30.1–18–12. Improper exercise of power—Breach of fiduciary duty.* If the exercise of power concerning the estate is improper, the personal representative is liable to interested persons for damage or loss resulting from breach of the personal representative's fiduciary duty to the same extent as a trustee of an express trust. The rights of purchasers and others dealing with a personal representative shall be determined as provided in sections 30.1–18–13 and 30.1–18–14."