655 N.W.2d 69 (2002)
2002 ND 211
ESTATE OF John T. GLEESON, Deceased.
Bryan L. Giese, Personal Representative, Petitioner and Appellee
v.
George J. Gleeson, Respondent and Appellant.
Margaret Ann Weekes, Kathleen Mary Gleeson, Respondents
v.
Jerome M. Gleeson, Respondent and Appellee.
No. 20020117.
Supreme Court of North Dakota.
December 30, 2002.
*71 David Boeck, Bismarck, ND, for respondent and appellant.
Bryan L. Giese, pro se, Mandan, ND, petitioner and appellee.
Benjamin C. Pulkrabek, Mandan, ND, for respondent and appellee Jerome M. Gleeson.
NEUMANN, Justice.
[¶ 1] George J. Gleeson appeals from the trial court's March 19, 2002, final order closing the estate, and the February 3, 2002, order approving sixth and final account. We affirm.

I
[¶ 2] John T. Gleeson died January 28, 1992. The trial court appointed Jerome M. Gleeson, a son, as personal representative of the estate. John's Last Will and Testament provided only one specific devise: that John's car go to Jerome's older child. After settlement of claims, the remainder of the estate was to go to residuary devisees. The four residuary devisees were John Gleeson's four children: Jerome M. Gleeson, George J. Gleeson, Margaret Gleeson Weekes, and Kathleen M. Gleeson. A codicil provided that Jerome could occupy John's residence until Jerome's youngest son completed high school or reached nineteen years of age, whichever occurred first. Jerome was also allowed $3,000 per year to help with taxes, insurance, and maintenance of the residence. In 1996, the four residuary devisees sold the residence to Jerome's dependent minor children, Matthew and Patrick Gleeson. All four residuary devisees signed a quitclaim deed transferring their interest in the residence to Jerome's children. At the time George signed the quitclaim deed, George had a court-appointed *72 conservator. The conservator did not sign the quitclaim deed or any other document that would have transferred George's interests.
[¶ 3] In April of 1999, George petitioned the trial court for an order to show cause regarding the administration of the estate. The trial court ordered Jerome to provide a complete accounting of estate business, to show why the court should not appoint an expert to audit the estate business, and to show why Jerome could not distribute the remaining estate assets and close the estate by June 1, 1999. On February 9, 2000, the trial court upheld the sale of the residence and dismissed Jerome as personal representative. Attorney Bryan Giese was appointed successor personal representative on April 27, 2000. The trial court, in its sixth and final account, declined to require Jerome to produce additional financial records and ordered the estate to pay the fees of the successor personal representative. The estate closed March 19, 2002, after distribution of assets. George appeals, arguing the trial court improperly held the sale of the residence was valid, erred by refusing to require personal representative Jerome Gleeson to produce additional financial records, and abused its discretion by ordering the estate to pay the successor representative's fees.

II
[¶ 4] Regarding the sale of the residence, the dispositive issue is whether, under North Dakota's Uniform Probate Code, George possessed the capacity to quitclaim his interest in the residence while he was a protected person under a conservatorship.
[¶ 5] George argues the sale of the residence was improper because he was under a conservatorship and did not possess the capacity to sign the quitclaim deed transferring his interest in the residence. Alternatively, George argues the order creating the conservatorship gave his conservator powers similar to that of a guardian, creating a de facto guardianship. Therefore, he did not have authority to contract away his interests.
[¶ 6] The trial court ruled George's signature on the quitclaim deed was valid and the sale of the residence was proper because George's conservator accepted the proceeds of the sale, did not object to the sale, never sought to rescind the sale of George's interest, and North Dakota's Uniform Probate Code allowed George to transfer his interest in the property while he was protected by a conservatorship.
[¶ 7] The interpretation and application of a statute is a question of law, fully reviewable on appeal. In the Matter of the Estate of Zimmerman, 1998 ND 116, ¶ 13, 579 N.W.2d 591. "We interpret uniform laws in a uniform manner, and we may seek guidance from decisions in other states which have interpreted similar provisions in a uniform law." In re Estate of Zimmerman, 2001 ND 155, ¶ 14, 633 N.W.2d 594. We may look to the Editorial Board Comments of the Uniform Probate Code to interpret its provisions. Id.
[¶ 8] In North Dakota, a court order finding a basis for appointment of a conservator has no effect on the capacity of the protected person. N.D.C.C. § 30.1-29-08(2)(e) (U.P.C.5-408). While "[t]he appointment of a conservator vests in the conservator title as trustee to all property of the protected person ..., [t]he appointment... is not a transfer or alienation within the meaning of general provisions of any federal or state statute or regulation...." N.D.C.C.§ 30.1-29-20 (U.P.C.5-420). While the title to all the protected party's property may have vested in the conservator, a protected person can still *73 enter into contracts: "Unlike a situation involving appointment of a guardian, the appointment of a conservator has no bearing on the capacity of the disabled person to contract or engage in other transactions." Id., Editorial Board Comment.
[¶ 9] The courts of Maine and Montana, states adopting versions of the Uniform Probate Code similar to ours, interpret these statutes to provide that a person, while under the protection of a conservatorship, retains the capacity to contract or engage in other transactions. Taylor v. Kennedy, 719 A.2d 525, 528 (Me.1998); Matter of Estate of Clark, 237 Mont. 179, 772 P.2d 299, 303 (1989).
[¶ 10] In Taylor, the trial court had construed a conservatorship as limiting the ability of the protected person to exercise control over employees because the protected person lacked the capacity to be an employer. 719 A.2d at 528. The Supreme Judicial Court of Maine stated, "[n]othing in the Probate Code, however, states that a person under a conservatorship cannot be an employer. Indeed, the Code suggests the opposite." Id. Relying on 18-A M.R.S.A. §§ 5-408(5) and the Editorial Board Comment to 5-420 from Maine's Uniform Probate Code, the Maine Court concluded the statutes did not limit the protected person's capacity to be an employer and to control his employees. Id.
[¶ 11] In Clark, the Supreme Court of Montana interpreted Mont.Code Ann.§ 72-5-421(5): "[t]he institution of a conservatorship is not an adjudication of competency and has no effect on the protected person's capacity. The protected person is therefore presumed to have the capacity to contract with third parties." 772 P.2d at 303 (citation omitted). Clark involved an additional complication; the sale in that case was between the protected persons and their conservator. However, we find persuasive the Montana Court's interpretation of the conservatorship statutes as to the capacity of protected persons.
[¶ 12] In the case at bar, Jerome, Margaret, and Kathleen knew George was a protected person subject to a conservatorship at the time of the transfer. George and the other residuary devisees signed the quitclaim deed transferring title of the residence to Matthew and Patrick Gleeson. George's conservator accepted the proceeds of the sale, did not object to the sale, and did not seek to rescind or void the sale. Nothing in our statutes suggests George could not quitclaim his interest in the residence. Indeed, the code suggests the opposite. Because our conservatorship statutes do not limit a protected person from engaging in transactions and a protected person is presumed to have the capacity to contract with third persons, we conclude George had the capacity to sign the quitclaim deed and transfer his interest in the residence.
[¶ 13] Alternatively, George argues he was under a de facto guardianship at the time he signed the quitclaim deed and, therefore, he had no authority to contract away his interest in the residence. In support, George contends his conservator was a de facto guardian because the trial court's order appointing the conservator (1) gave the conservator full legal authority over George, which is allowed under the guardianship statutes but not under the conservatorship statutes; (2) referred to George as a "ward," the term used for an incapacitated person under our guardianship statutes but not under the conservatorship statutes; (3) found George to be "incapacitated," a finding not required under the conservatorship statutes but required under the guardianship statutes; and (4) allowed the conservator limited authority over George's place of residence, a power only allowed under the guardianship statutes. We disagree.
*74 [¶ 14] Procedures outlined in our statutes for appointing a guardian and a conservator are very different; the bar for appointment of a guardian is higher than that for appointment of a conservator. The appointment of a guardian requires the participation of a physician or clinical psychologist, while a trial court "may" have a physician participate in conservatorship proceedings. Compare N.D.C.C. § 30.1-28-03(3) and (5) with N.D.C.C. § 30.1-29-07(2). Nothing in the record indicates a physician or clinical psychologist participated in the appointment of George's conservator.
[¶ 15] While the appointment order found George to be "incapacitated," incapacity under the guardianship statutes must be found by clear and convincing evidence, while the conservatorship statutes merely require the trial court to appoint a conservator after a basis for the appointment "has been established." Compare N.D.C.C. § 30.1-28-04(2)(b) with N.D.C.C. § 30.1-29-07(3). The order does not indicate what kind of "incapacity" George was found to have, and we cannot presume the nature of the incapacity based on the record. Furthermore, the order appointing George's conservator states "[t]he conservator's authority is limited by Chapter 30.1-28 of the North Dakota Century Code," the guardianship chapter. Because we conclude George was a protected person under a conservatorship and not a de facto guardianship, George possessed the capacity to contract regarding his interest in the residence.
[¶ 16] George next argues the sale of the residence was voidable because Jerome sold the residence to Jerome's children at a price below fair market value creating a conflict of interest and violating Jerome's fiduciary duty as personal representative.
[¶ 17] Whether a personal representative breached a fiduciary duty is a question of fact. Matter of Estate of Peterson, 1997 ND 48, ¶ 36, 561 N.W.2d 618. A trial court's finding of fact will not be set aside unless it is clearly erroneous. Id. A finding of fact is clearly erroneous if the finding is induced by an erroneous view of the law, if there is no evidence to support the finding, or if, after reviewing all evidence, we are left with a definite and firm conviction a mistake has been made. In re Estate of Howser, 2002 ND 33, ¶ 10, 639 N.W.2d 485. On appeal, a trial court's findings of fact are presumed to be correct and the complaining party bears the burden of showing a finding is clearly erroneous. Id.
[¶ 18] Here, the trial court ruled because the heirs had signed the quitclaim deed, they had impliedly agreed to the sale price. Therefore, the price was proper, even though it was below fair market value. Essentially, the trial court found because all heirs had notice of and consented to the price, Jerome did not breach a fiduciary duty to them. In making its ruling, the trial court distinguished Matter of Estate of Thomas, 532 N.W.2d 676, 687 (N.D.1995) (holding a personal representative breached his fiduciary duty by selling stock for par value when the stock could have been sold at a higher price) and Cudworth v. Cudworth, 312 N.W.2d 331, 336 (N.D.1981) (holding the sale of land in an estate by a personal representative to his son, without notification of heirs, was breach of a fiduciary duty). The record shows the four residuary devisees had notice of the sale price and, without objection, freely signed the quitclaim deed transferring their interest in the residence. George has not shown the trial court's ruling was clearly erroneous. The trial court considered the applicable case law and record evidence in arriving at its ruling. *75 The trial court's ruling is therefore affirmed.

III
[¶ 19] George next argues the trial court erred when it refused to order Jerome to produce "additional financial records." While George maintained there were more financial records than those provided by Jerome as personal representative during probate, this issue was presented to the trial court in George's "statement of unresolved issues." The trial court did not address George's "statement of unresolved issues" because it had not been filed or served as a motion and no hearing had been scheduled for it. The trial court therefore held the matters contained in the statement were not properly before it for review or consideration. It is well settled that an issue not properly raised before the trial court cannot be brought for the first time before this Court. Unser v. N.D. Workers Comp. Bureau, 1999 ND 129, ¶ 14, 598 N.W.2d 89.

IV
[¶ 20] Finally, George argues the trial court abused its discretion when it ordered the estate to pay successor personal representative Giese for fees attributable to procrastination in performing his duties.
[¶ 21] "A personal representative is entitled to reasonable compensation for services rendered." Matter of Estate of Flaherty, 484 N.W.2d 515, 520 (N.D.1992). The determination of attorney fees is left to the sound discretion of the trial court. Id. at 521. We will not overturn a trial court's determination absent a showing of abuse of discretion, and the trial court's underlying findings of fact will be upheld unless clearly erroneous. Id.
[¶ 22] George claims Giese had a duty to prepare an inventory of the estate within the appropriate amount of time after his appointment, to prepare a supplementary inventory when required, and take possession of estate property when required. George argues because Giese failed in these duties, Giese invited contact from devisees for which he could bill the estate, thereby increasing the fees he could charge.
[¶ 23] The trial court approved Giese's fees when it denied George's objection in its order approving the sixth and final account of the estate. Because a trial court is considered an expert in determining the value of reasonable attorney fees for services rendered to an estate, see Peterson, 1997 ND 48,¶ 29, 561 N.W.2d 618, the trial court did not abuse its discretion in determining Giese's fees were fair and reasonable.

V
[¶ 24] For the above-stated reasons, the trial court's decisions are affirmed.
[¶ 25] KAPSNER, MARING, JJ., MICHAEL O. McGUIRE, District Judge, and KIRK SMITH, Surrogate Judge, concur.
[¶ 26] The Honorable MICHAEL O. McGUIRE, District Judge, and the Honorable KIRK SMITH, Surrogate Judge, sitting in place of VANDE WALLE, C.J., and SANDSTROM, J., disqualified.