2017 ND 34

In the MATTER OF BRADLEY K. BRAKKE TRUST dated November 11, 2013

Timothy A. Brakke, Petitioner and Appellee

v.

Bell State Bank & Trust, Trustee of the Bradley K. Brakke Trust, Respondent and Appellant

and

Vicki Brakke, Kari Headington, Respondents

Alanna Rerick, Appellee

No. 20160045

Supreme Court of North Dakota.

Filed 2/23/2017

Andrew D. Cook (argued) and Sara K. Sorenson (on brief), P.O. Box 458, West Fargo, N.D. 58078–0458, for petitioner and appellee.

Berly D. Nelson (argued) and Ian R. McLean (appeared), P.O. Box 6017, Fargo, N.D. 58108–6017, for respondent and appellant.

Crothers, Justice.

[¶ 1] Bell State Bank & Trust, as trustee of the Bradley K. Brakke Trust, appeals from a judgment approving a settlement and dismissing Timothy Brakke's petition challenging Bradley Brakke's capacity to

create the Trust. We conclude the district court did not err in accepting the settlement agreement and dismissing Timothy Brakke's petition. We affirm the judgment.

## I

[¶ 2] Brothers Bradley and Timothy Brakke operated a family farm. Timothy Brakke began managing the farm in 1974, claiming he contributed significantly more labor and management skill to the farming operation than Bradley Brakke. Nevertheless Timothy Brakke agreed to equally split the farm profits with his brother and Bradley Brakke agreed that when he died he would leave half of his property to Timothy Brakke and half to their sister, Kari Headington. According to Timothy Brakke, the brothers agreed in 2009 that Timothy Brakke's daughter, Alanna Rerick, would receive her father's half of Bradley Brakke's property.

[¶ 3] In September 2009 Bradley Brakke executed a will citing a marital agreement with his wife, Vicki Brakke, and providing her with a life estate in his property. The will provided the residue of Bradley Brakke's estate would be devised equally to Headington and Rerick after the expiration of Vicki Brakke's life estate.

[¶ 4] On November 11, 2013 Bradley Brakke executed a will revoking his former wills, devising the residue of his estate to Bell State as successor trustee under the November 11, 2013 Bradley Brakke Trust and directing the administration of his estate under that Trust. Under the 2013 Trust, Bradley Brakke conveyed his property to himself as trustee and named Bell State as successor trustee. The 2013 Trust provided Vicki Brakke with a life estate in Bradley Brakke's property and stated "[t]he continued well-being and comfort of [his] spouse is the primary concern and the Trustee shall administer this Trust accordingly." The Trust effectively disinherited Rerick by distributing the entire residue to Headington, or to Headington's children if she did not survive both Bradley and Vicki Brakke. On November 11, 2013, Bradley Brakke executed a general durable power of attorney designating Bell State as his attorney in fact.

[¶ 5] According to Bell State, in January 2014, Bradley Brakke indicated he wanted to amend the 2013 Trust to add language distributing approximately fifteen acres of land equally to Headington and Rerick. On March 12, 2014, Bell State, acting under Bradley Brakke's 2013 power of attorney, executed the 2014 Trust restating the entire 2013 Trust and adding a provision authorizing the trustee to distribute fifteen acres equally to Headington and Rerick upon Vicki Brakke's death. According to Bell State, the material purpose of Bradley Brakke's changes to his Trust was to leave a significant portion of his assets to Headington or her children, to give Rerick only a small amount of his property, for Timothy Brakke to receive none of his assets and to prevent Timothy Brakke from interfering with his estate planning.

[¶ 6] Bradley Brakke died on April 5, 2014. Bell State, as successor trustee, sent May 6, 2014 letters to Vicki Brakke, Headington, Rerick and Timothy Brakke, informing them about the 2013 will, the 2013 Trust, the 2013 power of attorney, and the 2014 Trust. The letter explained the 2014 Trust "supersede[d], in its entirety, the original [2013] Trust ... and govern[ed] the administration and distribution of the Trust." The letter said the recipients had 120 days to contest the validity of the Trust "as created on November 11, 2013 and as restated on March 12, 2014."

[¶ 7] Rerick assigned all her right, title and interest in Bradley Brakke's estate to Timothy Brakke, including all claims or causes of action related to the estate, and Timothy Brakke filed an August 26, 2014

petition specifically challenging Bradley Brakke's capacity to create the 2013 Trust. The petition stated the 2013 Trust was contrary to the brothers' agreement for Rerick to receive half of Bradley Brakke's estate and sought to set aside the 2013 Trust and distribute Bradley Brakke's property under his 2009 will. The petition stated it was filed "to simply reserve any and all of [Timothy Brakke's] rights under North Dakota law, but his hope is to seek to resolve this family matter with [Bradley Brakke's] wife and his sister and not engage in full-blown litigation." Separate counsel for Vicki Brakke and Headington both filed notices of appearance in the proceeding.

[¶ 8] In June 2015, Bell State moved for summary judgment, claiming Timothy Brakke lacked standing to challenge the 2013 Trust and any challenge to the 2014 Trust was barred by the statute of limitations because Timothy Brakke's petition specifically failed to challenge the 2014 Trust. Timothy Brakke moved to amend his petition to explicitly challenge the 2014 Trust and also moved for approval of a settlement agreement distributing an additional 1,060 acres of land to Rerick.

[¶ 9] The district court denied Bell State's motion for summary judgment, granted Timothy Brakke's motion to amend his petition and approved the settlement. The court ruled Timothy Brakke had standing to bring the petition because he was a third-party beneficiary under the claimed oral agreement that Rerick would receive half of Bradley Brakke's estate and because Rerick assigned her interest in the estate to him. The court also allowed Timothy Brakke to amend his petition to specifically challenge the 2014 Trust because the underlying facts in his initial petition left no mistake he was challenging the Trust as a means to reinstate the 2009 will. The court found the amendment relat-

ed back to the initial petition. The court ruled N.D.C.C. § 59–09–11, a provision in the Uniform Trust Code relating to nonjudicial settlements, did not apply to the proffered settlement in the context of the ongoing judicial proceeding. The court instead applied the Uniform Probate Code, N.D.C.C. §§ 30.1–22–01 and 30.1–22–02, and approved the settlement, concluding it addressed a good faith dispute, it was consented to by the necessary parties and it was just and reasonable. The court also concluded the settlement did not frustrate a material purpose of Bradley Brakke's Trust because the underlying litigation challenged his capacity to create the Trust.

## II

[¶ 10] Bell State argues the district court should have applied N.D.C.C. § 59–12–11 from the Uniform Trust Code to the proposed settlement agreement. Doing so, the district court should have rejected the agreement because it changed the residuary beneficiary of nearly half of Bradley Brakke's land from Headington to Rerick and was inconsistent with a material purpose of the 2014 Trust. Bell State argues the court erred in applying N.D.C.C. §§ 30.1–22–01 and 30.1–22–02 from the Uniform Probate Code to approve the settlement because the Trust unambiguously distributed Bradley Brakke's property, no good faith dispute existed about Bradley Brakke's capacity, the settlement did not provide a just and reasonable result and not all the beneficiaries consented to the settlement.

## A

[¶ 11] Our analysis of the district court's approval of the settlement agreement requires consideration of the interrelationship of North Dakota's enactments of the Uniform Trust Code in N.D.C.C. chs. 59–

09 through 59–19 and the Uniform Probate Code in N.D.C.C. tit. 30.1.

[¶ 12] Statutory interpretation is a question of law, fully reviewable on appeal. Hector v. City of Fargo, 2012 ND 80, ¶ 30, 815 N.W.2d 240. The primary objective in interpreting statutes is to determine the intention of the legislation. Amerada Hess Corp. v. State ex rel. Tax Comm'r, 2005 ND 155, ¶ 12, 704 N.W.2d 8. Words in a statute are given their plain, ordinary and commonly understood meaning, unless defined by statute or unless a contrary intention plainly appears. N.D.C.C. § 1–02–02. Statutes are construed as a whole and are harmonized to give meaning to related provisions. N.D.C.C. § 1–02–07. If the language of a statute is clear and unambiguous, "the letter of [the statute] is not to be disregarded under the pretext of pursuing its spirit." N.D.C.C. § 1–02–05. We construe statutes to give effect to all of their provisions so that no part of the statute is rendered inoperative or superfluous. N.D.C.C. § 1–02–38(2) and (4). "We interpret uniform laws in a uniform manner, and we may seek guidance from decisions in other states which have interpreted similar provisions in a uniform law." In re Estate of Allmaras, 2007 ND 130, ¶ 13, 737 N.W.2d 612. See N.D.C.C. § 1–02–13 (uniform laws must be construed to effectuate general purpose to make uniform the laws of enacting states). When we interpret and apply provisions in a uniform law, we may look to official editorial board comments for guidance. In re Estate of Gleeson, 2002 ND 211, ¶ 7, 655 N.W.2d 69.

[¶ 13] With modifications, the North Dakota Legislature adopted the Uniform Trust Code in 2007 after an interim study by the Legislature's Judiciary Committee in conjunction with a State Bar Association Task Force. See 2007 N.D. Sess. Laws ch. 549, §§ 15–25; Report of the North Dakota Legislative Council to the Sixtieth Legislative Assembly 304–06 (2007). The Uniform Trust Code contains basic default rules under which the terms of a trust are generally controlling. Report of North Dakota Legislative Council, at 305. See N.D.C.C. § 59–09–05 [Uniform Trust Code § 105] (Default and Mandatory Rules).

[¶ 14] Section 59–09–11, N.D.C.C. [Uniform Trust Code § 111], permits a nonjudicial settlement in trust matters to the extent the agreement does not violate a material purpose of the trust and includes terms that could be approved by the court under N.D.C.C. chs. 59–09 through 59–19, or other applicable laws. Timothy Brakke's petition invoked a judicial proceeding and we agree with the district court his petition rendered the nonjudicial settlement provisions of N.D.C.C. § 59–09–11 inapplicable.

[¶ 15] Chapter 59–10, N.D.C.C. [Uniform Trust Code §§ 201–204], describes judicial proceedings in the administration of a trust. Under N.D.C.C. § 59–10–01 [Uniform Trust Code § 201], a "court may intervene in the administration of a trust to the extent its jurisdiction is invoked by an interested person or as provided by law," and a judicial proceeding may relate to any matter in the trust's administration, including a request for instruction and an action to declare rights. See also N.D.C.C. § 32–23–04 (describing determinations by declaratory judgment for rights in a trust). The comment to Uniform Trust Code § 201 explains the trust code generally encourages resolution of disputes without court intervention but a court always is available to the extent its jurisdiction is invoked by interested persons.

[¶ 16] Chapter 59–12, N.D.C.C., includes provisions for the creation, validity, modification and termination of a trust and requires the party creating a trust to have capacity. N.D.C.C. § 59–12–02(1) [Uniform

Trust Code § 402]. "The capacity required to create, amend, revoke, or add property to a revocable trust ... is the same as that required to make a will." N.D.C.C. § 59–14–01 [Uniform Trust Code § 601]. See N.D.C.C. § 30.1–08–01 [Uniform Probate Code § 2–501] ("Any adult who is of sound mind may make a will."). See also Erickson v. Olsen, 2014 ND 66, ¶ 20, 844 N.W.2d 585 (describing standard for testamentary capacity requiring testator to have sufficient strength and clearness of mind to know nature and extent of property and the names and identity of the persons who are object of bounty).

[¶ 17] Here, Timothy Brakke's petition challenged Timothy Brakke's capacity to create the Trust:

"The execution was contrary to the long-standing understanding between the brothers. Moreover, in November 2013, [Bradley Brakke] had been suffering from alcoholism for several years, had unsuccessfully been in and out of treatment and the hospital, was unable to work, and was mentally and physically impaired. Upon information and belief, at the time of the purported execution of the Trust, [Bradley Brakke] had a history of the following issues that caused his cognitive function and reasoning to be severely affected: (1) he had suffered from high ammonia levels in his blood due to the alcoholism; (2) he had suffered from delirium tremens (DTs) on more than one occasion; and (3) he was intoxicated, beginning in the morning and continuing throughout the day, on every occasion that [Timothy Brakke] saw [Bradley Brakke] in 2013. Just months after the purported execution of the trust, [Bradley Brakke] was hospitalized for the last time due to complications from his alcoholism, and he died from complications of end stage liver disease caused by alcoholic cirrhosis."

Timothy Brakke's petition claimed Bradley Brakke lacked capacity to execute the Trust due to alcoholism. See Matter of Estate of Stanton, 472 N.W.2d 741, 745–46 (N.D. 1991) (affirming summary judgment that testator did not lack testamentary capacity due to "drinking problem" and "blackouts and delusions"). Bradley Brakke's claimed lack of capacity, if true, invalidates the creation of his Trust. See N.D.C.C. § 59–12–02(1) (party creating a trust must have capacity). In the context of litigation challenging Bradley Brakke's capacity to create the Trust, Timothy Brakke moved the district court to approve a settlement agreement modifying the Trust.

[¶ 18] Section 59–12–11 N.D.C.C. [Uniform Trust Code § 411], provides for the modification of a noncharitable irrevocable trust by consent of all the beneficiaries if the court finds modification is not inconsistent with a material purpose of the trust:

"1. .... A noncharitable irrevocable trust may be modified upon consent of all of the beneficiaries if the court concludes that modification is not inconsistent with a material purpose of the trust. An irrevocable trust that is modified under this subsection continues to be irrevocable."

. . . .

"3. If not all of the beneficiaries consent to a proposed modification or termination of the trust under subsection 1, the modification or termination may be approved by the court if the court is satisfied that if all of the beneficiaries had consented, the trust could have been modified or terminated under this section and the interests of a beneficiary who does not consent will be adequately protected."

[¶ 19] Timothy Brakke's petition challenges Bradley Brakke's capacity to create the Trust. Section 59–12–11, N.D.C.C.,

presumes the existence of a validly created trust and precludes modification inconsistent with a material purpose of that trust. The Uniform Trust Code does not explicitly address settlement agreements in judicial proceedings raising claims about a settlor's capacity to create a. trust. However, two well-known authorities on trusts have recognized the application of provisions in the Uniform Probate Code to family settlement agreements and modifications of trusts in litigation challenging the creation of a trust. Mary F. Radford, George Gleason Bogert, and George Taylor Bogert, The Law of Trusts & Trustees §§ 994, 1009 (3d ed. 2006); 5 Austin Wakeman Scott, William Franklin Fratcher, and Mark L. Ascher, Scott on Trusts § 34.1.6 (5th ed. 2008). Professor Radford recognizes statutes like Uniform Probate Code §§ 3–1101 and 3–1102 authorize a court to approve compromises that alter or terminate trusts under family settlement agreements if the court is convinced the litigation is undertaken on reasonable grounds and in good faith, the results of the agreement are fair to all parties, and the parties to the agreement constitute the entire class of beneficiaries and are competent to execute the agreement. Radford, Bogert, and Bogert, at § 1009. Professor Scott agrees these Uniform Probate Code provisions authorize a court to approve a compromise under proper circumstances even if the interests of some of the beneficiaries are inalienable and it appears the settlor intended to deprive those beneficiaries of management of trust property. 5 Scott, Fratcher, and Ascher, at § 34.1.6

[¶ 20] The Uniform Probate Code states it generally applies to trusts subject to administration in this state, and a district court has jurisdiction over subject matter relating to trusts. N.D.C.C. §§ 30.1–02–01(5) and 30.1–02–02 [Uniform Probate Code §§ 1–301 and 1–302]. Section 30.1–22–01, N.D.C.C. [Uniform Probate Code § 3–1101], describes the binding effect of a compromise of any controversy regarding the effect of any "governing instrument":

"A compromise of any controversy as to admission to probate of any instrument offered for formal probate as the will of a decedent, the construction, validity, or effect of any governing instrument, the rights or interests in the estate of the decedent, of any successor, or the administration of the estate, if approved in a formal proceeding in the court for that purpose, is binding on all the parties thereto, including those unborn, unascertained, or who could not be located. An approved compromise is binding even though it may affect a trust or an inalienable interest. A compromise does not impair the rights of creditors or of taxing authorities who are not parties to it."

Section 30.1–22–02, N.D.C.C. [Uniform Probate Code § 3–1102], outlines the procedure for court approval of a compromise:

"The procedure for securing court approval of a compromise is as follows:"

"1. The terms of the compromise shall be set forth in an agreement in writing which shall be executed by all competent persons and parents or guardians acting for any minor children having beneficial interests or having claims which will or may be affected by the compromise. Execution is not required by any person whose identity cannot be ascertained or whose whereabouts is unknown and cannot reasonably be ascertained.

"2. Any interested person, including the personal representative, if any, or a trustee, then may submit the agreement to the court for its approval and for execution by the personal representative, the trustee of

every affected testamentary trust, and other fiduciaries and representatives.

"3. After notice to all interested persons or their representatives, including the personal representative of any estate and all affected trustees, the court, if it finds that the contest or controversy is in good faith and that the effect of the agreement upon the interests of persons represented by fiduciaries or other representatives is just and reasonable, shall make an order approving the agreement and directing all fiduciaries under its supervision to execute the agreement. Minor children represented only by their parents or guardians may be bound only if their parents or guardians join with other competent persons in execution of the compromise. Upon the making of the order and the execution of the agreement, all further disposition of the estate is in accordance with the terms of the agreement."

[¶ 21] The Editorial Board Comment to N.D.C.C. § 30.1–22–01 [Uniform Probate Code § 3–1101] states 1993 technical amendments to those provisions "clarified original intention that the described procedure would be available to resolve controversies other than those concerning a will." The amendments substituted "governing instrument" for "probated will." See 1995 N.D. Sess. Laws ch. 322, §§ 24 and 25. The plain language of N.D.C.C. § 30.1–22–01 [Uniform Probate Code § 3–1101] now authorizes "[a] compromise of any controversy as to ... the ... validity, or effect of any governing instrument."

[¶ 22] The statements by Professors Radford and Scott are consistent with the general jurisdictional provisions in N.D.C.C. §§ 30.1–02–01(5) and 30.1–02–02,

the clarifying amendments to N.D.C.C. §§ 30.1–22–01 and 30.1–22–02, the recognition in the comment to Uniform Trust Code § 201 that a court always is available to resolve disputes and the absence of any language in the Uniform Trust Code for family settlement agreements in judicial proceedings contesting a settlor's capacity to create a trust. Those authorities evidence an intent that a court may apply N.D.C.C. §§ 30.1–22–01 and 30.1–22–02 to settlements in judicial proceedings challenging a settlor's capacity to create a trust. In proceedings that do not challenge a settlor's capacity to create a trust any modification or termination of a noncharitable irrevocable trust must be consistent with a material purpose of the trust. See N.D.C.C. § 59–12–11 [Uniform Trust Code § 411]. The procedures in N.D.C.C. §§ 30.1–22–01 and 30.1–22–02, authorize a court to consider an agreement settling litigation challenging a settlor's capacity to create a trust.

[¶ 23] Here, the district court said the settlement would not frustrate a material purpose of the Trust because the settlement was properly brought before the court by a party with standing to resolve a good faith dispute regarding Bradley Brakke's capacity to create the Trust. The provisions in N.D.C.C. § 59–12–11 for modification of a trust presume a valid trust and preclude altering a material purpose of the trust. Timothy Brakke's petition challenged Bradley Brakke's capacity to create the Trust. The court said that if Bradley Brakke lacked capacity to create the Trust, the Trust itself would not exist. The court applied the procedural language in N.D.C.C. §§ 30.1–22–01 and 30.1–22–02 to the settlement. We conclude the court did not err in applying those provisions to the settlement agreement in Timothy Brakke's litigation challenging Bradley Brakke's capacity to create the Trust.

**B**

[¶ 24] Appellate courts do not agree on the standard of review used to review approval of family settlement agreements. Some authorities recognize a court's discretion to approve a settlement agreement. 15A C.J.S., Compromise and Settlement, § 25 (2012). However, in In re Estate of Schroeder, 441 N.W.2d 527, 530 (Minn. Ct. App. 1989), the Minnesota Court of Appeals treated a trial court's approval of a family settlement agreement as a fully reviewable legal conclusion because the determination was not based on findings from disputed facts. See Wilson v. Dallas, 403 S.C. 411, 743 S.E.2d 746, 758–67 (2013) (stating appellate court saw no reasonable or substantial basis to support finding of good faith and record did not indicate the effect of settlement was just and reasonable). See also Denney v. Deutsche Bank AG, 443 F.3d 253, 273 (2d Cir. 2006) (stating approval of settlement agreement normally rests in discretion of district court but appellate court may review decision de novo where appellant's challenge raises novel issues of law). We recognize our formulation of the abuse-of-discretion standard of review includes review to ascertain whether there has been a misapplication or misinterpretation of the law. In re Guardianship & Conservatorship of Thomas, 2006 ND 219, ¶ 7, 723 N.W.2d 384. But we need not decide which standard of review to apply to the approval of the settlement agreement in this case because we conclude the district court did not err in approving the agreement under N.D.C.C. §§ 30.1–22–01 and 30.1–22–02 and either standard of review.

**C**

[¶ 25] Under the plain language of N.D.C.C. §§ 30.1–22–01 and 30.1–22–02, a compromise must be in a written agreement executed by all competent persons and parents or guardians acting for minor children having beneficial interests affected by the compromise and the court must determine the litigation is in good faith and the effect of the agreement is just and reasonable.

**1**

[¶ 26] Bell State argues no good faith dispute existed over Bradley Brakke's capacity to create the Trust.

[¶ 27] "Our law recognizes the contractual nature of certain agreements settling estate disputes between family members." In re Estate of Harms, 2012 ND 62, ¶ 12, 814 N.W.2d 783. A claim contesting the validity of a governing instrument generally must be in good faith to constitute consideration for a family settlement agreement, and the claim is not in good faith if brought in bad faith to extort a settlement, or if the claim is known to be frivolous and without foundation. See M.L. Cross, Annot., Family Settlement of Testator's Estate, 29 A.L.R.3d 8, § 27 (1970 and Supp. 2016). In Wilson, 743 S.E.2d at 759–60 (footnotes omitted), the South Carolina Supreme Court discussed the good faith requirement in the context of a settlement agreement in litigation raising an undue influence challenge to an estate plan consisting of a will and an irrevocable charitable trust:

"The 'good faith' requirement has been variously interpreted, with jurisdictions applying definitions that can be categorized along a continuum from a subjective to an objective standard, and they have afforded the claims a level of scrutiny that is less than that given to ordinary contracts, up to what has been described as 'close scrutiny.'

"However, it is universally acknowledged that full proof of the asserted claims is not required because the raison d'etre for the statute is to dispense with

the necessity of litigating the merits of the claims. The circuit court's duty was not to decide the ultimate question of the merits of the undue influence and other claims; rather, the statutory standard is whether the proposed compromise agreement resolves a good faith controversy and whether the agreement is just and reasonable."

[¶ 28] In a similar context involving a family settlement agreement, this Court recognized:

"The law favors compromises and does not scrutinize too closely the nature of the rights of the parties concerned.

"It is not a question of what the court may think as to the advisability of the terms of the compromise. A controversy founded on good faith will support a compromise. Whether the compromise agreement settles the issues as the court might have settled them is unimportant. Even while controversies are in litigation there is nothing to prevent parties from making a compromise settlement. The law discourages litigation and encourages settlement."

Muhlhauser v. Becker, 76 N.D. 402, 417, 37 N.W.2d 352, 362 (1948) (citations omitted).

[¶ 29] The district court determined Timothy Brakke's challenge to the Trust was made in good faith and the settlement addressed a good faith dispute:

"First, according to [Timothy Brakke's] affidavit, [Bradley Brakke's] chronic alcoholism was so severe in 2005 he could not operate farm machinery and was placed on medical leave. Second, [Timothy Brakke] says he agreed to share farm profits with [Bradley Brakke] even though [Bradley Brakke] contributed far less to the farming operation than [Timothy Brakke]. [Bradley Brakke] used part of his share of the profits to purchase farmland, with the understanding [Timothy Brakke] would receive one-half

of [Bradley Brakke's] property upon [Bradley Brakke's] death. [Timothy Brakke] says this agreement was modified in 2009 so Alanna [Rerick] would receive the property upon [Bradley Brakke's] death instead of [Timothy Brakke]. Article IV of the 2009 Will appears to memorialize the agreement between [Timothy Brakke] and [Bradley Brakke] where Alanna [Rerick] would receive half of [Bradley Brakke's] property instead of [Timothy Brakke]."

[¶ 30] Timothy Brakke's underlying petition in this case involved a challenge to Bradley Brakke's capacity to create the Trust in conjunction with a claimed family agreement for disposition of the property. The settlement agreement represents resolution of that litigation by a limited number of family members without further judicial proceedings. Family settlement agreements are looked upon with favor. E.g., Muhlhauser, 76 N.D. at 417, 37 N.W.2d at 362. We conclude the district court did not err in determining Timothy Brakke's petition was a good faith challenge to Bradley Brakke's capacity to create a trust.

2

[¶ 31] Bell State argues the settlement agreement did not provide a just and reasonable result.

[¶ 32] In Wilson, 743 S.E.2d at 763, the South Carolina Supreme Court explained that for the effect of a settlement to be just and reasonable the plan in a settlement agreement must defer to a testator's intent unless a departure from that intent is reasonably necessary to protect the interest of the beneficiaries. See Schroeder, 441 N.W.2d at 533. See also Editorial Board Comment to N.D.C.C. § 30.1–22–02 [Uniform Probate Code § 3–1102] (explaining just and reasonable reason for

approving devolution different from that named by testator is to prevent dissipation of an estate by wasteful litigation). Those authorities recognize a settlement agreement may be just and reasonable if it prevents the dissipation of an estate's assets in litigation.

[¶ 33] Here, the district court determined settlement was necessary to prevent dissipation of the estate in further litigation. We conclude the district court did not err in deciding approval of the settlement agreement to resolve this litigation was necessary to avoid further litigation and protect the interests of the beneficiaries.

3

[¶ 34] Bell State argues not all of the beneficiaries consented to the settlement agreement. Section 30.1–22–02, N.D.C.C., requires a settlement agreement to be in writing and "executed by all competent persons and parents or guardians acting for any minor children having beneficial interests or having claims which will or may be affected by the compromise." Under the Uniform Trust Code, a beneficiary as it relates to a trust beneficiary means a person having "a present interest or future beneficial interest in a trust, vested or contingent, including the owner of an interest by assignment or transfer," or a person holding a power of appointment over trust property in a capacity other than that of a trustee. N.D.C.C. § 59–09–03(3) [Uniform Trust Code § 103]. See also N.D.C.C. § 30.1–01–06(4) [Uniform Probate Code § 1–201] (similar definition of beneficiary under Uniform Probate Code).

[¶ 35] The settlement agreement was signed by Timothy Brakke and Headington. The agreement stated Headington represented her minor children's interests, which were derived from and not in conflict with her interests. See N.D.C.C.

§§ 59–11–03(6) [Uniform Trust Code § 303] (describing conditions for a parent's representation of minor children) and 30.1–03–03(3) [Uniform Probate Code § 1–403] (stating parent may represent minor child if no conservator or guardian has been appointed). Although Rerick was a beneficiary and did not sign the settlement agreement, she submitted an affidavit to the court stating she consented to the petition, the proposed amended petition, the proposed settlement agreement and the motion to approve the settlement agreement. See Matter of Estate of Hedstrom, 472 N.W.2d 454, 456 (N.D. 1991) (agreement on record in open court is binding).

[¶ 36] Vicki Brakke holds a life estate in her husband's property under the Trust but did not sign the settlement agreement. It is well-settled a life estate holder "is entitled to both the possession and the use of the property ... including the right to rents, issues, and profits generated by the parcel during the tenant's life." Schroeder v. Buchholz, 2001 ND 36, ¶ 21, 622 N.W.2d 202 (quoting 51 Am. Jur. 2d Life Tenants and Remaindermen § 32 (2000)). A life tenant "is entitled to possession and enjoyment of the property as long as the estate endures; he or she may convey or lease his or her interest, but may not disregard the rights of those who take when the life estate ends." Id. Vicki Brakke was a beneficiary of the Trust to the extent she received a life estate in her husband's property. However, the settlement agreement pertains to distributions to residuary beneficiaries after the expiration of Vicki Brakke's life estate and does not affect her life estate. We conclude the district court did not err in accepting the settlement agreement without Vicki Brakke's signature.

D

[¶ 37] The district court did not err in approving the family settlement agree-

ment by all persons having beneficial interests affected by the agreement to achieve a just and reasonable result in good faith litigation.

## III

[¶ 38] Because the district court did not err in approving the settlement resolving the underlying litigation, we need not address Bell State's arguments the district court should have granted its motion for summary judgment in that litigation.

## IV

[¶ 39] We affirm the judgment approving the settlement agreement and dismissing Timothy Brakke's petition.

[¶ 40] Daniel J. Crothers

Lisa Fair McEvers

Dale V. Sandstrom, S.J.

James D. Hovey, D.J.

Gerald W. VandeWalle, C.J.

[¶ 41] The Honorable James D. Hovey, D.J., sitting in place of Kapsner, J., disqualified.

[¶ 42] The Honorable Jerod E. Tufte was not a member of the Court when this case was heard and did not participate in this decision. Surrogate Judge Dale V. Sandstrom, sitting.