**In the Matter of the ESTATE OF Lee C. LEIER, a/k/a Leo "Lee" Leier, Deceased.**

**Karen LEIER, Appellant,**

v.

**Eldore LEIER, Appellee.**

**Civ. No. 940073.**

Supreme Court of North Dakota.

Nov. 16, 1994.

Kathleen B. Cunningham (argued), Cunningham Law Firm, Minot, for appellant.

Ella Van Berkom (argued), Ella Van Berkom Law Firm, Minot, for appellee.

MESCHKE, Justice.

Karen Leier, Lee Leier's widow, appealed from a probate court judgment awarding the balance of the decedent's individual retirement account (IRA) to Eldore Leier, Lee's former wife. Because Lee's daughters were designated contingent beneficiaries of the IRA, and their interests in the IRA were represented by Eldore, we affirm.

When Lee opened an IRA at the First National Bank of Minot in 1976, he designated his wife, Eldore, as primary beneficiary and their adult daughters, Kathy Crawford and Paula Luxem, as contingent beneficiaries. Lee and Eldore were divorced in 1979, and their stipulated divorce decree awarded Lee "exclusive ownership" of the IRA.

Lee married Karen in December 1979. In June 1981, Lee executed a will that effectively devised his estate to Karen if she survived Lee, and equally to Paula, Kathy, and Kar-

en's son, Donnell Fry, if Karen did not survive Lee.

Lee continued contributions to the IRA through 1990. During his marriage to Karen, those contributions were made from their joint checking account. In 1991 the Bank distributed $15,183.44 from the IRA to Lee, and in 1992 it distributed $9,757.73 to him. Lee died on June 19, 1992, without changing the original beneficiaries designated in the IRA. The Bank distributed $6,000.00 to Karen for Lee's funeral expenses, leaving a balance of $18,802.62 in the IRA.

Karen sought a declaratory judgment that she was the sole owner of the IRA, contending Lee "inadvertently" or "through a mistake" left Eldore and his daughters on the IRA as beneficiaries. The trial court concluded that Lee's IRA was a "P.O.D. account" under NDCC Chapter 30.1–31; that it was governed by NDCC 30.1–31–09(2)(b); and that, under NDCC 30.1–31–10, it could not be altered by a will. The court determined that Eldore was entitled to the amount of Lee's contributions to the IRA before he married Karen; that, under equitable considerations, Karen was entitled to the amount of Lee's contributions to the IRA from their joint checking account; and that Karen and Eldore were entitled to interest earned on the IRA according to their proportional share in it. The court then subtracted the 1991 and 1992 distributions to Lee and Karen from Karen's share in the IRA. The court's computations resulted in Eldore receiving the entire $18,802.62 balance in the IRA. Karen appealed.

Before addressing this appeal by Karen, we summarize the statutory scheme in Article VI of the Uniform Probate Code, enacted as NDCC Chapter 30.1–31, for nonprobate transfers on death. In 1991, the Legislature repealed the former Article VI and enacted a new version to correspond with a revision approved in 1989 by the National Conference of Commissioners on Uniform State Laws. 1991 N.D.Laws Ch. 351. *See Conservatorship of Milbrath,* 508 N.W.2d 360 (N.D.1993). The Commissioners' 1989 Prefatory Note explains:

> This amendment of Uniform Probate Code Article VI (nonprobate transfers) replaces former Article VI with a revised article. Part 1 (provisions relating to effect of death) of the revised article is amended and relocated from former Part 2. Part 2 (multiple-person accounts) of the revised article is amended and relocated from former Part 1. Part 3 (Uniform TOD Security Registration Act) of the revised article is new. This reorganization allows for general provisions at the beginning of the article, and permits parts to be divided into subparts that group related provisions together.

Although neither the U.P.C. organization of parts and subparts, nor the official comments for this Article on nonprobate transfers on death were incorporated in the North Dakota Century Code, the organization makes the statutory arrangement more comprehensible.

Part 1 consists solely of NDCC 30.1–31–01,[1] which is a revised version of former NDCC 30.1–31–14. It broadly bestows effective status on contracts for the nonprobate

---

1. NDCC 30.1–31–01 says:
   1. A provision for a nonprobate transfer on death in an insurance policy, contract of employment, bond, mortgage, promissory note, certificated or uncertificated security, account agreement, custodial agreement, deposit agreement, compensation plan, pension plan, individual retirement plan, employee benefit plan, trust, conveyance, deed of gift, marital property agreement, or other written instrument of a similar nature is nontestamentary. This subsection includes a written provision that:
      a. Money or other benefits due to, controlled by, or owned by a decedent before death must be paid after the decedent's death to a person whom the decedent designates either in the instrument or in a separate writing, including a will, executed either before or at the same time as the instrument, or later;
      b. Money due or to become due under the instrument ceases to be payable in the event of death of the promisee or the promisor before payment or demand; or
      c. Any property controlled by or owned by the decedent before death which is the subject of the instrument passes to a person the decedent designates either in the instrument or in a separate writing, including a will, executed either before or at the same time as the instrument, or later.
   2. Subsection 1 does not limit rights of creditors under other laws of this state.

transfer of property at death by various types of written instruments, including account agreements, deposit agreements, and individual retirement plans. "The sole purpose of this section is to prevent the transfers authorized here from being treated as testamentary." U.P.C. 6–101, Editorial Board Comment (1989). The effect of NDCC 30.1–31–01 is that the identified instruments need not be executed in compliance with the formalities for wills in order to be valid transfers of property, and that the contractual arrangements in those instruments control the nonprobate transfer of the property on death. *Id.*

Part 2 consists of NDCC 30.1–31–02 through 30.1–31–20. It generally deals with "accounts," which may be either "single party" or "multiple parties" and applies to accounts established before its effective date. NDCC 30.1–31–04. For purposes of Part 2, an "account" is a "contract of deposit between a depositor and a financial institution," and a "party" is "a person who, by the terms of an account, has a present right, subject to request, to payment from the account other than as a beneficiary." NDCC 30.1–31–02(1) and (6).[2] Part 2 is organized into three distinct subparts: "definitions and general provisions," "ownership as between parties and others," and "protection of financial insti-

tutions." *See* U.P.C. 6–201 through 6–227. The "definitions and general provisions" subpart encompasses NDCC 30.1–31–02 through 30.1–31–07.

The limitations of the remaining two subparts are explained in NDCC 30.1–31–07:

The provisions of sections 30.1–31–08 through 30.1–31–13 concerning beneficial ownership as between parties or as between parties and beneficiaries apply only to controversies between those persons and their creditors and other successors, and do not apply to the right of those persons to payment as determined by the terms of the account. Sections 30.1–31–14 through 30.1–31–20 govern the liability and setoff rights of financial institutions that make payments pursuant to it.

Under NDCC 30.1–31–07, NDCC 30.1–31–08 through 30.1–31–13 control controversies about beneficial ownership between parties and beneficiaries and with their creditors and other successors, and the "terms of the account" determine the rights of "parties" and "beneficiaries" to payment from the account.

NDCC 30.1–31–08 spells out rules for apportioning beneficial ownership of an account during the lifetime of a "party." On the death of a "party," NDCC 30.1–31–09[3] pre-

---

**2.** NDCC 30.1–31–02 says, in part:

As used in sections 30.1–31–02 through 30.1–31–20:

1. "Account" means a contract of deposit between a depositor and a financial institution, and includes a checking account, savings account, certificate of deposit, and share account.

\*   \*   \*   \*   \*   \*

3. "Beneficiary" means a person named as one to whom sums on deposit in an account are payable on request after death of all parties or for whom a party is named as trustee.
4. "Financial institution" means an organization authorized to do business under state or federal laws relating to financial institutions, and includes a bank, trust company, savings bank, building and loan association, savings and loan association, and credit union.
5. "Multiple-party account" means an account payable on request to one or more of two or more parties, whether or not a right of survivorship is mentioned.
6. "Party" means a person who, by the terms of an account, has a present right, subject to

request, to payment from the account other than as a beneficiary or agent.

\*   \*   \*   \*   \*   \*

8. "P.O.D. designation" means the designation of:
   a. A beneficiary in an account payable on request to one party during the party's lifetime and on the party's death to one or more beneficiaries, or to one or more parties during their lifetimes and on death of all of them to one or more beneficiaries; or
   b. A beneficiary in an account in the name of one or more parties as trustee for one or more beneficiaries if the relationship is established by the terms of the account and there is no subject of the trust other than the sums on deposit in the account, whether or not payment to the beneficiary is mentioned.

**3.** NDCC 30.1–31–09 says:

1. Except as otherwise provided in this section, on death of a party sums on deposit in a multiple-party account belong to the surviving party or parties. If two or more parties survive and one is the surviving spouse of the decedent, the amount to which the decedent, immediately before death, was

scribes rules for determining rights in an account. Those rights are determined by the type of account and may be altered only by a party's written notice to the financial institution to change the type of account, or to stop or vary payment under the terms of the account. NDCC 30.1–31–10(1). *See Conservatorship of Milbrath*, 508 N.W.2d 360 (N.D. 1993) (decided under similar provisions of prior law). Under NDCC 30.1–31–10(2), survivorship rights arising from the express terms of the account, transfers under NDCC 30.1–31–09, or a P.O.D. designation may not be altered by will.

NDCC 30.1–31–11 says:

Except as provided in chapter 30.1–05 [elective share of surviving spouse] or as a consequence of, and to the extent directed by, section 30.1–31–12 [rights of creditors and others], a transfer resulting from the application of section 30.1–31–09 is effective by reason of the terms of the account involved and this part and is not testamentary or subject to chapters 30.1–01 through 30.1–25 [estate administration].

The 1989 Editorial Board Comment to that section explains that its purpose is to "bolster" the explicit statement that transfers of accounts under NDCC 30.1–31–02 through 30.1–31–20 are nontestamentary and are effective modes of transfer on death.

Relief from the nontestamentary transfers authorized by NDCC Chapter 30.1–31 is enabled by NDCC 30.1–31–12, if the assets of the estate are insufficient to pay the claims against the estate and the statutory allowances for the surviving spouse and children. According to the Editorial Board Comment, that section gives a remedy to creditors, the surviving spouse, and minor children to assure them that effective nonprobate transfers at death cannot reduce their essential protections if those transfers would have been testamentary.

■ Within that statutory framework, we consider Karen's argument that the trial court erred in concluding that Lee's IRA was a "P.O.D. account." She contends that Lee's IRA is not an "account" with a "P.O.D. designation" as defined by NDCC 30.1–31–02(1) and (8), because the definition of "account" is limited to the four examples listed in NDCC 30.1–31–02(1): "a checking account, savings account, certificate of deposit, and share account." She therefore argues that the trial court erred in applying NDCC 30.1–31–09 and 30.1–31–10. Alternatively, she argues that, if NDCC 30.1–31–09 is applicable, (*see* fn. 3), she was entitled to the proceeds from

beneficially entitled under section 30.1–31–08 belongs to the surviving spouse. If two or more parties survive and none is the surviving spouse of the decedent, the amount to which the decedent, immediately before death, was beneficially entitled under section 30.1–31–08 belongs to the surviving parties in equal shares, and augments the proportion to which each survivor, immediately before the decedent's death, was beneficially entitled under section 30.1–31–08, and the right of survivorship continues between the surviving parties.
2. In an account with a P.O.D. designation:
a. On death of one of two or more parties, the rights in sums on deposit are governed by subsection 1.
b. On death of the sole party or the last survivor of two or more parties, sums on deposit belong to the surviving beneficiary or beneficiaries. If two or more beneficiaries survive, sums on deposit belong to them in equal and undivided shares, and there is no right of survivorship in the event of death of a beneficiary thereafter. If no beneficiary survives, sums on deposit belong to the estate of the last surviving party.

3. Sums on deposit in a single-party account without a P.O.D. designation, or in a multiple-party account that, by the terms of the account, is without right of survivorship, are not affected by death of a party, but the amount to which the decedent, immediately before death, was beneficially entitled under section 30.1–31–08 is transferred as part of the decedent's estate. A P.O.D. designation in a multiple-party account without right of survivorship is ineffective. For purposes of this section, designation of an account as a tenancy in common establishes that the account is without right of survivorship.
4. The ownership right of a surviving party or beneficiary, or of the decedent's estate, in sums on deposit is subject to requests for payment made by a party before the party's death, whether paid by the financial institution before or after death, or unpaid. The surviving party or beneficiary, or the decedent's estate, is liable to the payee of an unpaid request for payment. The liability is limited to a proportionate share of the amount transferred under this section, to the extent necessary to discharge the request for payment.

the IRA under NDCC 30.1–31–09(1) as a surviving spouse, or under NDCC 30.1–31–09(3) as a residual devisee of Lee's estate.

The four examples of "accounts" listed in NDCC 30.1–31–02(1) are preceded by the primary definition of "a contract of deposit between a depositor and a financial institution," and by the term "includes" that generally is not a term of limitation, but a term of enlargement. *Lucke v. Lucke*, 300 N.W.2d 231 (N.D.1980). Some of the instruments designated in NDCC 30.1–31–01, such as "account agreement" and "deposit agreement," may satisfy that primary definition of account. However, an IRA does not lend itself to easy labeling and arguably contains elements of an "account" with a "P.O.D. designation." *See Johnson v. Johnson*, 113 Idaho 602, 746 P.2d 1061 (Ct.App.1987); *Graves v. Summit Bank*, 541 N.E.2d 974 (Ind.Ct.App. 1989); *Broom v. Broom*, 15 Va.App. 497, 425 S.E.2d 90 (1992). Nevertheless, we need not decide if Lee's IRA meets that definition of account, because in either case the result is the same under NDCC Chapter 30.1–31— unless the contractual designation of beneficiaries in his IRA is nullified, a question we discuss later, the designation controls the nontestamentary disposition of the property.

Under NDCC 30.1–31–01, the contractual arrangement controls the nontestamentary transfer for those instruments listed in that section. For those instruments that are accounts, NDCC 30.1–31–07 directs that "the terms of the agreement" determine the right to payment, and NDCC 30.1–31–11 authorizes a nontestamentary transfer "by reason of the terms of the account." Under NDCC 30.1–31–01 and 30.1–31–02 through 30.1–31–20, the terms of the written instrument control the nontestamentary transfer of the property.

Assuming Lee's IRA is an account, neither NDCC 30.1–31–09(1) nor 30.1–31–09(3) is applicable. NDCC 30.1–31–09(1) applies to a "multiple-party account," one that gives two or more persons a present right to payment other than as a beneficiary or agent. NDCC 30.1–31–02(5) and (6). Lee's IRA is a "single party" instrument and not a "multiple-party" instrument, because he was the only person with a present right to payment from it.

NDCC 30.1–31–09(3) applies to a single-party account without a P.O.D. designation. A "P.O.D. designation" means the designation of "[a] beneficiary in an account payable on request to one party during the party's lifetime and on the party's death to one or more beneficiaries." NDCC 30.1–31–02(8)(a). Lee's IRA designated Eldore as primary beneficiary on his death and their adult daughters as contingent beneficiaries on his death. Those designations are "P.O.D. designations." Under NDCC 30.1–31–09(2)(b), on the death of the sole party, sums on deposit in an account with a P.O.D. designation belong to the surviving beneficiary or beneficiaries.

Karen nevertheless asserts that the trial court erred in not allowing rescission of Lee's designation of Eldore as beneficiary, contending Lee made a unilateral mistake in not changing beneficiaries after the divorce. Relying on *Nunn v. Equitable Life Assurance Society*, 272 N.W.2d 780 (N.D.1978), she also argues that the effect of the divorce decree terminated Eldore's beneficiary interest in the IRA.

In *Nunn*, this court considered similar contentions in the context of the continued designation of an ex-wife as a beneficiary in her ex-husband's insurance policy. The ex-husband remarried and subsequently died without changing the designation of his ex-wife as beneficiary under the policy.

The ex-husband's surviving spouse argued the decedent failed to change beneficiaries because of a mistake. We held that the ex-husband's failure to change beneficiaries due to a mistaken impression that a change was not necessary was insufficient to change the beneficiary. That aspect of *Nunn* controls our resolution of the question of mistake. *See* NDCC 30.1–31–10: "A right of survivorship [in an account] arising from the express terms of the account, section 30.1–31–09, or a P.O.D. designation, may not be altered by will," but can only be altered by a written notice given by the party to the financial institution.

In *Nunn*, the surviving spouse also argued that the divorce decree divested the ex-wife of her interest in her ex-husband's insurance

policy despite his failure to change the beneficiary. We recognized the general rule that a beneficiary's rights in an insurance policy are not affected by a divorce between the beneficiary and insured, but we said that a beneficiary may still contract away an interest in the policy through a settlement agreement even if the beneficiary is not formally changed. We explained that, notwithstanding the husband's failure to change the designation of beneficiary, the specific award of an insurance policy to the husband in a property settlement and divorce decree terminates the wife's interest in the proceeds, but we also said that result is not clear when the settlement and decree do not mention the insurance policy specifically. We recognized that, when the policy is not specifically mentioned, some courts refuse to rewrite the settlement to include the insurance policy, and other courts attempt to ascertain the parties' intent. We adopted a case-by-case approach for resolving the question, and we held that, under the circumstances of that case, there was no evidence the parties or the divorce court intended to distribute the insurance proceeds in the divorce.

█ In this case, the settlement agreement and divorce decree awarded Lee "exclusive ownership" of the IRA as against Eldore. However, in addition to designating Eldore as primary beneficiary of the IRA, Lee also designated his two adult daughters, Paula and Kathy, as contingent beneficiaries. During oral argument, the parties agreed that counsel for Eldore also represented the two daughters. Assuming that the divorce decree divested Eldore of her interest in the IRA,[4] Karen has presented no legal argument to disregard Lee's designation of his two daughters as contingent beneficiaries.

IN *Matter of Estate of Bruce*, 877 P.2d 999 (Mont.1994), the Montana Supreme Court considered a similar question about an IRA that continued to designate the decedent's ex-wife as primary beneficiary and his children as contingent beneficiaries. The court held that a property settlement agreement did not relinquish the ex-wife's inchoate interest as named beneficiary of the IRA, and that her renunciation of that right after the ex-husband's death resulted in the contingent beneficiaries receiving the proceeds of the IRA.

We are not persuaded that the divorce decree divested Lee's adult daughters of their claim as contingent beneficiaries of his IRA, or elevated any claim of Karen above that of his daughters. We therefore conclude that the effect of the divorce decree did not alter Lee's designation of his daughters as beneficiaries of the IRA. We hold that the trial court did not err in refusing to declare Karen the owner of the IRA.[5]

Accordingly, we affirm the judgment.

LEVINE, NEUMANN and SANDSTROM, JJ., concur.

VANDE WALLE, C.J., concurs in the result.

---

4. The 1993 Legislature enacted legislation on revocation of probate and nonprobate transfers by a divorce. 1993 N.D.Laws, Ch. 334, § 40. Under that law, a divorce revokes any revocable disposition of property made by a divorced individual to that individual's former spouse. *Id.* Under section 51 of Ch. 334, however, the enactment does not become effective until August 1, 1995.

5. We express no opinion on the daughters' rights vis-a-vis Eldore. No question has been raised by them about the trial court's reliance on an "equitable consideration" to allocate the balance in Lee's IRA between Karen and Eldore.